STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1220

TOWN OF SORRENTO, ET AL

VERSUS

EAST ASCENSION CONSOLIDATED GRAVITY
DRAINAGE DISTRICT NO. 1

Judgment Rendered: ___APR 1 2 2022___

* * * * *

On Appeal from the
Twenty-Third Judicial District Court
In and for the Parish of Ascension
State of Louisiana
No. 129,239

The Honorable Jason Verdigets, Judge Presiding

* * * * *

| | |
|---|---|
| Jean-Paul Robert<br>Gonzales, Louisiana | Attorney for Defendant/Appellant,<br>East Ascension Consolidated Gravity<br>Drainage District No. 1 |
| Robert R. Faucheux, Jr.<br>LaPlace, Louisiana | Attorneys for Plaintiff/Appellee,<br>Town of Sorrento |
| Matthew I. Percy<br>Anna Q. Skias<br>Jamie S. Thistlethwaite<br>Gonzales, Louisiana | Attorneys for Plaintiff/Appellee,<br>Michael Lambert |

* * * * *

BEFORE:  WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

The defendant appeals the trial court's judgment denying its peremptory exceptions of no cause of action and failure to join an indispensable party and the judgment granting the plaintiffs' motion for summary judgment. For the following reasons, we recall our rule to show cause order and maintain the appeal. We affirm the judgment denying the defendant's exceptions and reverse the judgment granting the plaintiffs' motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The Town of Sorrento and Michael Lambert, appearing as Mayor of the Town of Sorrento and as a citizen and landowner residing in the Town of Sorrento (collectively, "the Town"), filed a petition for declaratory judgment in July 2020 against the East Ascension Consolidated Gravity Drainage District No. 1. According to the petition, the Town lies within the geographical territory of the District and its citizens pay taxes specifically collected to fund drainage works within the District. The Town contended that the District has arbitrarily and unreasonably refused to clean and maintain roadside ditches and culverts located within the Town's municipal boundaries.[1] The Town prayed for judgment declaring that the District: (1) owes a continuing duty and obligation to clean and maintain roadside ditches and culverts located with its statutory boundaries, including those within the Town's municipal boundaries and (2) owes a continuing duty and obligation to treat all property and citizens/electors located within its statutory boundaries equally, including all property and citizens/electors within the Town.

---

[1] The Town's petition was amended in August 2020 to include an allegation that the District's conduct was arbitrary and unreasonable.

The District filed an answer in October 2020, admitting the Town is within its territory.[2] The District denied having a duty to clean and maintain the Town's roadside ditches and culverts or a duty to treat all property and citizens within its territory equally. The District also denied that it has refused to clean and maintain the Town's roadside ditches and culverts and, instead, asserted that the Town declined to accept the terms of its "offer" to perform work in the Town. The District further asserted that it has discretionary authority to perform the work it deems necessary to accomplish its duties.

The Town filed the instant motion for summary judgment in March 2021, seeking judgment in its favor regarding the relief sought in the petition for declaratory judgment. To support the motion, the Town relied on evidence to establish that, since 1984, the District has exercised its statutory authority to levy and collect taxes within its territory, which have been paid by the Town's citizens and property owners. All voter-approved tax propositions from 1984 to 2018 provide for the collection of revenue for the purpose of maintaining and operating drainage works within the District. As the Town correctly points out, the tax propositions do not exempt and/or bar a municipality within the District, such as the Town, from receiving services funded by tax proceeds. Consequently, the Town argued, incorporated municipalities should not have limited access to funds collected through these taxes and consideration of municipal boundaries should not be a factor in any District decision or expenditure of funds.

To further highlight the District's allegedly disparate treatment, the Town produced evidence that the District offered to clear the Town's roadside ditches in June 2019 in exchange for, among other things, the Town's acknowledgment that the District has no duty to perform the work and its agreement to indemnify the

---

[2] Prior to filing an answer, the District filed a peremptory exception of no cause of action, asserting that the Town's petition impermissibly sought to mandate decisions within the District's discretion. The exception was denied on October 6, 2020.

3

District and to limit the contract's term to one year. Conversely, the District clears roadside ditches in unincorporated areas within its territory and does not require those citizens to agree to similar terms. The Town argued that its evidence established that the District's refusal to perform work within the "invisible boundaries" of the municipality was arbitrary and unreasonable, thereby justifying the court's interference with the District's discretion. The Town cites *Chiro v. Fourth Jefferson Drainage District*, 159 La. 471, 477-78, 105 So. 556, 559 (1925), which provides, "It is well settled that, unless a public board's discretion is unreasonably or arbitrarily or fraudulently exercised, the courts will not undertake to control it, or to substitute their discretion" for that of the public body charged by law with the doing of the work. *See also Lake Terrace Property Owners Association v. City of New Orleans*, 567 So.2d 69, 74 (La. 1990) (In reviewing the decisions of public bodies, the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily.)

Finally, the Town requested expedited consideration of its motion pursuant to La. C.C.P. art. 1878, "as this matter concerns the constitutionality of the expenditure of State funds." Pursuant to Article 1878(B), in a proceeding seeking a declaratory judgment as to the constitutionality of the expenditure of state funds, the court shall set the matter with preference and proceed to hear and determine the matter as expeditiously as the ends of justice may require.

The District opposed the motion for summary judgment, asserting that the trial court may not "override" its discretion concerning the drainage work it chooses to perform. It also produced evidence to demonstrate that it has appropriated money to upgrade pumping stations in the Town, for a total expenditure that "far exceeds the tax revenue collected" in the Town.

4

The District also filed exceptions raising the objections of no cause of action, "failure to plead supplemental relief," and failure to join an indispensable party (*i.e.*, the Louisiana Attorney General). The District interpreted the Town's reliance on Article 1878 as a "constitutional claim" under La. C.C.P. art. 1880 and maintained that a claim challenging the constitutionality of a statute must be set forth in the petition and served on the Attorney General. Thus, the District argued that the Town's constitutional challenge was improperly asserted for the first time in a motion for summary judgment in a proceeding wherein the Attorney General was not a party. In response to the exceptions, the Town expressly denied asserting a constitutional challenge to any statute or ordinance and explained that it relied on Article 1878 as a procedural device to obtain a hearing on the motion for summary judgment as quickly as possible.

The trial court heard argument on the District's exceptions and the Town's motion on May 4, 2021. The exceptions were denied in open court, and a judgment confirming the ruling was signed on May 13, 2021. After taking the motion under advisement, the trial court rendered judgment in favor of the Town, finding the Town satisfied its summary judgment burden of proving no genuine issue of material fact remains as to the duty owed by the District to the Town to clean and maintain roadside ditches and culverts within the municipality. The court concluded that the District acted arbitrarily and unreasonably in failing to perform this duty and by requiring the Town to sign an agreement before the work is performed, a requirement not based in law or jurisprudence and which sets a different standard for the Town. A written judgment granting the motion was signed on June 4, 2021.

The District filed the instant appeal, seeking reversal of the judgment denying its exceptions of no cause of action and failure to join an indispensable party, as well as the judgment granting the Town's motion for summary judgment.

5

## RULE TO SHOW CAUSE ORDER

This court, *sua sponte*, issued a rule to show cause order on November 19, 2021, noting defects in the June 4, 2021 judgment. After receiving briefs on the show cause order from both parties, this court issued an interim order on January 18, 2022, remanding the matter for the limited purpose of instructing the trial court to sign an amended judgment correcting the cited deficiencies, particularly, the absence of specific declarations and/or the denial of relief sought and the lack of certainty on the face of the judgment indicating whether all claims between the parties were resolved, citing La. C.C.P. art. 2088(A)(12) and La. C.C.P. art. 1951, as amended by 2021 La. Acts, No. 259, § 2.

Pursuant to the interim order, the appeal record was supplemented with an amended judgment signed on February 2, 2022. The amended judgment expressly states that the motion for summary judgment is granted in favor of the Town and against the District and specifically provides:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the relief awarded to the [Town] is a continuing duty and obligation is owed by [the District] to clean and maintain the roadside ditches and culverts that are located within the statutory boundaries, which includes the municipal boundaries of the Town of Sorrento. This continuing duty and obligation includes treating all property and citizens/electors located within the statutory boundaries equally.

The February 2, 2022 amended judgment also states that it is a final judgment that adjudicates all outstanding issues. Considering this, we find the amended February 2, 2022 judgment cured the identified deficiencies in the original June 4, 2021 judgment. The rule to show cause order is recalled and the appeal is maintained.

## EXCEPTIONS

We find no merit in the District's assertion that the Town is challenging the constitutionality of a statute or ordinance. The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of a pleading by determining whether the law affords a remedy on the facts alleged in the pleading. *Palowsky v.*

6

*Cork*, 2019-0148 (La. App. 1st Cir. 5/20/20), 304 So.3d 867, 872. The District acknowledges the Town has not asserted a constitutional challenge in its original or amended petition. Additionally, the Town refutes the District's contention that it has raised or attempted to raise a constitutional challenge at any time in this proceeding. This express denial is supported by the allegations in the Town's pleadings and its motion for summary judgment, as well as those made within the context of the request for expedited consideration. It is evident the Town relied on Article 1878 solely to obtain an expedited hearing date on its motion.[3] For these reasons, we also find the Louisiana Attorney General is not an indispensable party and there is no requirement that his office be served with a copy of the proceeding and provided an opportunity to be heard. *See* La. C.C.P. arts. 641 and 1880. *See also Goodwin v. Louisiana Department of Health*, 2018-1405 (La. App. 1st Cir. 5/31/19), 277 So.3d 816, 821 (A party is indispensable only when the facts clearly establish that no complete and equitable adjudication of the controversy can be made in his absence.) Thus, the May 13, 2021 judgment denying the District's exceptions of no cause of action and failure to join an indispensable party is affirmed.[4]

## MOTION FOR SUMMARY JUDGMENT

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.[5] La. C.C.P. art. 966(A)(3). If the party moving for summary judgment will bear the burden of persuasion on the subject issue at trial, as here, that

---

[3] The trial court denied the Town's request for expedited consideration and set the motion as a regular fixing.

[4] This court denied the District's writ application taken from the May 13, 2021 judgment and request for a stay of the proceedings. *Town of Sorrento v. East Ascension Consolidated Gravity Drainage District No. 1*, 2021-0610 (La. App. 1st Cir. 7/30/21) (unpublished).

[5] In its opposition filed with the trial court, the District asserted the Town's motion was premature because the District "had no opportunity for discovery." The trial court rejected this argument, which the District does not raise on appeal. Therefore, it is not addressed by this court.

party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 766 (per curiam); *Aucoin v. Larpenter*, 2020-0792 (La. App. 1st Cir. 4/16/21), 324 So.3d 626, 632, writ denied, 2021-00688 (La. 9/27/21), 324 So.3d 87. A motion for directed verdict is appropriately granted when, after considering all evidentiary inferences in the light most favorable to the party opposing the motion, it is clear the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. *LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.*, 2013-0163 (La. App. 1st Cir. 11/7/14), 167 So.3d 746, 751, writ not considered, 2015-0086 (La. 4/2/15), 162 So.3d 392. Such an affirmative showing shifts the burden of production to the party opposing the motion for summary judgment and requires that party to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial. *Aucoin*, 324 So.3d at 632. However, if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment. *Hines*, 876 So.2d at 766.

Appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge*, 2017-1553, 2017-1554 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194.

The District is a political subdivision of the State of Louisiana. Ascension Parish Ordinance Sec. 18-30, Section 2. It may incur debts and contract obligations, sue and be sued, and do and perform all acts in its corporate capacity and in its

8

corporate name necessary and proper for the carrying out of the purpose and objects for which the drainage district was created. La. R.S. 38:1764(A); Ordinance Sec. 18-30, Section 2. The District is governed by a board of commissioners, which "shall have the power to open all natural drains in the district, to cut and open new drains, and such other work of drainage as they may deem necessary." Ordinance Sec. 18-30, Section 5. Similarly, La. R.S. 38:1767 pertinently states, "The board of drainage commissioners may open all natural drains which they deem necessary in their respective districts and perform all work connected therewith, which they may deem necessary to make the opening of the natural drains effective. They may cut and open new drains, ditches, and canals wherever deemed necessary...." The board is further empowered to "perform all other acts necessary" to fully drain all the land in its district and maintain the drainage when established.[6] La. R.S. 38:1767.

When used in a statute, the word "may" is permissive. La. R.S. 1:3; *Pierce Foundations, Inc. v. Jaroy Construction, Inc.*, 2015-0785 (La. 5/3/16), 190 So.3d 298, 304 (recognizing that a "cardinal rule" of statutory interpretation is that the word "may" is permissive). It is evident from the provisions cited above that the District has the authority to perform the drainage works, which *it* deems necessary, but it has no duty to carry out specific drainage projects. The District has the discretion to determine how, when, and where to exercise its authority to properly carry out the function for which it was created, subject only to judicial intervention if this discretion is unreasonably, arbitrarily, or fraudulently exercised. *Lake Terrace Property Owners Association*, 567 So.2d at 74.

---

[6] We find the District's reliance on La. R.S. 33:1236(2)(c) is misplaced, because this statute pertinently states that *police juries* may, upon request of the governing authority of any incorporated municipality, perform all or any part of the repair, maintenance and care of culverts and other drainage facilities, situated within and under the jurisdiction of such incorporated municipality, and may expend for such purposes any funds made available to them for road purposes.

9

The Town concedes that the District has the discretion to determine which drainage works to undertake but argues that it exercised this discretion in an arbitrary or unreasonable manner, particularly considering the Town's citizens pay taxes collected for the precise benefit they are not receiving. The trial court agreed and found that the District acted arbitrarily and unreasonably by treating the Town differently from others within its territory. However, the February 2, 2022 amended judgment does not simply order the District to cease exercising its authority in carrying out the functions for which it was created in an arbitrary and unreasonable manner. Instead, the judgment declares that the District has an affirmative duty and obligation to perform certain drainage works, *i.e.*, clear and maintain roadside ditches and culverts. This finding is contrary to the legal authorities cited above, which clearly provide the District with discretion to determine which drainage projects to undertake.

The same is true regarding the portion of the February 2, 2022 amended judgment, which declares that the District must treat all property, citizens, and electors located within its territory equally. The trial court's ruling does more than ensure that the District gives the same consideration to drainage projects within the Town's municipal boundaries as it does to those beyond the Town's borders. Instead, this broad declaration creates an obligation on the District to allocate funds equally and to give equal priority to all drainage projects. Neither Ascension Parish Ordinance Sec. 18-30 nor the applicable statutes, which set forth the powers of the District and board of commissioners, impose this requirement.

Additionally, we disagree with the Town that the collection of taxes alone creates an obligation for the District to clean and maintain the Town's roadside ditches and culverts or otherwise dictates that all property, citizens, and electors must be treated equally. The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. La. R.S.

10

39:704. Tax revenues obtained from a special tax must be used for no other purpose than that stated in the proposition submitted to and approved by the electorate. *Central Community School Board v. East Baton Rouge Parish School Board*, 2008-0036 (La. App. 1st Cir. 6/6/08), 991 So.2d 1102, 1109-10, writs denied, 2008-1480, 2008-1538 (La. 12/12/08), 997 So.2d 561. Louisiana Revised Statutes 47:338.168 authorizes the District to levy and collect taxes; subpart (D) states, "The proceeds of the tax shall be used and expended solely for the purpose or purposes set out in the proposition approved by the electors at the election authorizing said tax."

The first tax proposition at issue, approved by voters in 1984, provides for the collection of a sales tax in the District for ten years "dedicated for the purpose of constructing, acquiring, maintaining and operating gravity and/or forced drainage facilities to drain lands" in the District. In 1998, voters approved a tax proposition for the collection of an ad valorem tax on all property subject to taxation in the District for ten years "to be dedicated and used for the same purposes of maintaining and operating said District's drainage works." Finally, in 2008 and 2018, voters approved similar ten-year tax propositions, which stated that the property taxes collected are "to be used entirely and exclusively to provide funds to pay the operation and maintenance costs and expenses of the drainage works of the District." None of these tax propositions expressly require the District to maintain roadside ditches and culverts, either broadly within the District or specifically within the Town, nor do these propositions mandate "equal" treatment for all property, citizens, or electors. Instead, these propositions dictate the purpose for which the funds must be used, leaving the District with the discretion to determine how to fulfill this purpose.

Similarly, the tax propositions at issue in La. Atty. Gen. Op. No. 15-0100 (2015) asked voters, in part, whether an Allen Parish Road District shall continue to levy a tax on all property subject to taxation within the Road District "for the purpose

11

of constructing, improving and maintaining Parish roads and bridges within the [Road] District...."[7] The Attorney General concluded that this language did not direct the Parish to maintain municipal roads within the Parish; thus, the Parish was not obligated to perform this task. Specifically, the Attorney General stated, "[A]bsent explicit language mandating or directing the Parish to maintain municipal roads, the determination as to which roads will be maintained with ad valorem tax funds rests with the governing authority of the Parish."

In La. Atty. Gen. Op. No. 20-0056 (2021), the Attorney General examined the language of three tax propositions to determine what, if any, obligation the Parish Police Jury had regarding streets and drainage within a municipality. The first tax proposition asked voters whether West Carroll Parish shall continue to levy a tax on all property subject to taxation within the Parish "for the purpose of acquiring, constructing, improving, maintaining and/or operating drainage works, improvements and facilities within and for the Parish...." Another proposition asked whether West Carroll Parish shall continue to levy a tax on all property subject to taxation within the Parish "for the purpose of improving and maintaining roads and bridges in the Parish...." Finally, the third proposition asked whether West Carroll Parish shall continue to levy and collect a sales tax within the Parish, with one-half of the proceeds of the tax to be dedicated and used for general operating expenses of the Parish and one-half for constructing and maintaining drains and drainage facilities and for constructing and maintaining roads and bridges in the Parish. The Attorney General concluded that, pursuant to the language of each, the taxes shall be utilized for the enumerated purposes, but the Parish is not obligated to fully fund repair, maintenance, and materials for roads, culverts, and other drainage facilities

---

[7] While an Attorney General opinion is merely advisory and not binding authority, we recognize its persuasive authority, particularly where there is no jurisprudence on point. *Dipaola v. Municipal Police Employee' Retirement System*, 2014-0037 (La. App. 1st Cir. 9/25/14), 155 So.3d 49, 53, writ denied, 2014-2575 (La. 2/27/15), 159 So.3d 1071.

within the corporate limits of a municipality, which itself lies within the Parish boundaries.[8]

Considering the language of the tax propositions at issue here and, specifically, the stated purpose of the tax revenue, we find the Town failed to satisfy its burden of showing it was entitled to the relief sought in its motion, particularly, the declarations prayed for and granted by the trial court. Therefore, the February 2, 2022 amended judgment granting the Town's motion for summary judgment is reversed.

## CONCLUSION

For the above and foregoing reasons, the November 19, 2021 rule to show cause order is recalled and the appeal is maintained. The May 13, 2021 judgment denying the peremptory exceptions of no cause of action and failure to join an indispensable party filed by the East Ascension Consolidated Gravity Drainage District No. 1 is affirmed. The February 2, 2022 amended judgment granting the motion for summary judgment in favor of the Town of Sorrento and Michael Lambert, in his capacity as Mayor of the Town of Sorrento and as a citizen and landowner residing in the Town of Sorrento, and against the East Ascension Consolidated Gravity Drainage District No. 1 is reversed. The costs of these proceedings in the amount of $2,440.50 are assessed against the Town of Sorrento and Michael Lambert, in his capacity as Mayor of the Town of Sorrento and as a citizen and landowner residing in the Town of Sorrento.

**RULE TO SHOW CAUSE ORDER RECALLED; JUDGMENT DENYING EXCEPTIONS AFFIRMED; JUDGMENT GRANTING MOTION FOR SUMMARY JUDGMENT REVERSED.**

---

[8] We have already noted that La. R.S. 33:1236(2)(c), the pertinent statute at issue in La. Atty. Gen. Op. 15-0100 and Op. 20-0056, does not apply here. Nevertheless, we find the Attorney General's consideration of the language of the tax propositions to determine whether a duty exists is instructive.

13